UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JAMIE S.,

                    Plaintiff,                          Case No. C25-5820-MLP

          v.                                           ORDER

COMMISSIONER OF SOCIAL SECURITY,

                    Defendant.

## I.    INTRODUCTION

Plaintiff seeks review of the denial of her application for Disability Insurance Benefits. Plaintiff contends that the administrative law judge ("ALJ") erred by misevaluating the medical opinion evidence and Plaintiff's testimony, resulting in an erroneous determination at Step Three and Step Five. (Dkt. # 9.) The Commissioner filed a response arguing that the ALJ's decision is free of legal error, supported by substantial evidence, and should be affirmed. (Dkt. # 14.) Plaintiff filed a reply. (Dkt. # 15.) Having considered the ALJ's decision, the administrative record ("AR"), and the parties' briefing, the Court AFFIRMS the Commissioner's final decision and DISMISSES the case with prejudice.[1]

---

[1] The parties consented to proceed before the undersigned Magistrate Judge. (Dkt. # 3.)

ORDER - 1

## II.    BACKGROUND

Plaintiff was born in February 1978, has a high school education, and has worked in retail. AR at 59-60, 10673. She was last gainfully employed in April 2007. *Id.* at 10660. In September 2019, Plaintiff applied for benefits, alleging disability as of April 10, 2007. *Id.* at 17. Her applications were denied initially and on reconsideration, and Plaintiff requested a hearing. *Id.* After the ALJ conducted a hearing on September 23, 2020, the ALJ issued a decision finding Plaintiff not disabled. *Id.* The Appeals Council denied review, *id.* at 1, and Plaintiff appealed to the Eastern District of Washington, which remanded with instructions to reevaluate: (1) neuropathy and leg pain at Step Two; (2) Listings 12.04 and 12.06 at Step Three; (3) Plaintiff's subjective symptom complaints; and (4) Step Five with vocational expert testimony. *Id.* at 75-78, 85-97.

On remand, the same ALJ held a second hearing on February 16, 2023, and again found Plaintiff not disabled. AR at 7803, 7820. Plaintiff again appealed to the Eastern District of Washington, which remanded with instructions to reevaluate Plaintiff's subjective complaints and to reassess the medical-opinion evidence, Step Three, and Step Five to the extent affected by that evaluation. *Id.* at 10732.

On the second remand, a new ALJ held a third hearing on May 19, 2025. AR at 10658. Plaintiff did not appear; her counsel appeared and reported he had been unable to contact her. *Id.* The hearing proceeded without objection, and the ALJ left the record open for two weeks to allow counsel to submit a written statement if he reached her. *Id.* No statement was submitted, and the ALJ found Plaintiff had waived her right to appear. *Id.*

ORDER - 2

Using the five-step disability evaluation process,[2] the ALJ found, in pertinent part, that Plaintiff did not engage in substantial gainful activity from her alleged onset date, April 10, 2007, through her date last insured, September 30, 2008. AR at 10660. During that period, she had the severe impairments of diabetes mellitus, obesity, left-ear hearing loss, migraines, leg pain, bipolar disorder, and anxiety disorder. *Id.* at 10661. The ALJ found that none of these impairments, alone or in combination, met or equaled a listed impairment. *Id.* at 10662. The ALJ determined that, through the date last insured, Plaintiff had the residual functional capacity ("RFC") to perform medium work, except she could understand, remember, and carry out instructions for simple tasks with only occasional changes in the work setting and processes; and could have only occasional interaction with the public and coworkers, with no tandem tasks. *Id.* at 10665. Relying on vocational expert testimony, the ALJ found Plaintiff could perform the representative occupations of hand packager, cleaner, and dry cleaner, and therefore was not disabled. *Id.* at 10673-74.

The ALJ's July 2025 decision is the Commissioner's final decision. AR at 10674. Plaintiff appealed the final decision of the Commissioner to this Court.[3] (Dkt. # 1.)

### III.    LEGAL STANDARDS

Under 42 U.S.C. § 405(g), this Court may overturn the Commissioner's denial of social security benefits if the ALJ's decision rests on legal error or is not supported by substantial evidence. *Smartt v. Kijakazi*, 53 F.4th 489, 494 (9th Cir. 2022). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 102-03 (2019) (cleaned up). In applying this

---

[2] 20 C.F.R. § 404.1520.

[3] At the time of her first and second appeals, Plaintiff resided in Spokane County. AR at 10696. She later moved to Kitsap County, giving this Court jurisdiction over the present appeal. (Dkt. # 1 at 2.)

ORDER - 3

standard, the Court must consider the record as a whole to determine whether it contains sufficient evidence to support the ALJ's findings. *Id.*

Although the Court evaluates the record as a whole, it is not permitted to reweigh the evidence or substitute its judgment for that of the ALJ. *Ahearn v. Saul*, 988 F.3d 1111, 1115 (9th Cir. 2021). The ALJ is tasked with evaluating testimony, resolving conflicts in the medical evidence, and addressing ambiguities in the record. *Smartt*, 53 F.4th at 494-95. Where the evidence can be interpreted in more than one rational way, the ALJ's decision must be upheld. *Id.* Even if the ALJ erred, reversal is not warranted unless the error affected the outcome of the disability determination. *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020). The party challenging the ALJ's decision bears the burden of demonstrating harmful error. *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

## IV.    DISCUSSION

### A.    The ALJ Did Not Err in Evaluating Plaintiff's Testimony

Absent evidence of malingering, an ALJ is required to provide clear and convincing reasons for discounting a claimant's testimony. *See Laborin v. Berryhill*, 867 F.3d 1151, 1155 (9th Cir. 2017). That said, the ALJ is not required to believe every allegation, nor to analyze testimony line by line. *See Ahearn*, 988 F.3d at 1116; *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020). The question is not whether this Court is convinced, "but instead whether the ALJ's rationale is clear enough that it has the power to convince." *Smartt*, 53 F.4th at 499.

The ALJ considered Plaintiff's testimony from previous hearings and discounted it as inconsistent with the medical record, including minimal treatment, improvement with treatment, and her activities. AR at 10666-71. Plaintiff argues the ALJ erred in discounting her testimony

ORDER - 4

regarding (1) migraine headaches, (2) neuropathy and leg pain, and (3) mental health symptoms. (Dkt. # 9 at 11-16.) The Court addresses each argument in turn.[4]

### 1.    Migraine Headaches

Plaintiff testified that during the relevant period her migraines worsened and occurred for six hours, two to three times a week. AR at 7838-39. The ALJ found this inconsistent with: (1) her contemporaneous reports to providers; (2) reduced emergency room use during the relevant period, (3) inconsistent compliance with treatment recommendations, and (4) inconsistent descriptions of symptom intensity. *Id.* at 10666-67. Plaintiff contends the ALJ did not identify these inconsistencies with sufficient specificity. (Dkt. # 9 at 11-12.)

The record supports the ALJ's reasoning. In January 2007, before the alleged onset date, Plaintiff reported going to the emergency room three to four times per month for migraines. AR at 682. During the insured period, however, she had four emergency room visits total, only two for migraines. *Id.* at 418, 433, 447, 449, 472. In March 2008, her provider noted that her migraines were well controlled with medication. *Id.* at 630. Impairments that can be effectively controlled with treatment are not disabling. *Warre v. Comm'r of Soc. Sec.*, 439 F.3d 1001, 1006 (9th Cir. 2006).

---

[4] The record also reflects a history of substance use and opioid-seeking behavior, which, although not expressly relied upon by the ALJ in the most recent decision, provides context for some of the treatment notes the ALJ discussed. Plaintiff testified that she used methamphetamine daily from approximately 2011 to 2014. AR at 62. Medical records reflect that in 2011 she told providers she had quit methamphetamine. *Id.* at 971. She was prescribed Vicodin during and after the relevant period, at least through 2018. *See, e.g., id.* at 543, 559, 1268. In July 2008, during the insured period, her primary-care provider noted "concern about requirement and demanding of Vicodin for pain control," and that Plaintiff "stormed out tearfully" before the visit ended because she could not wait to receive pain medication by mail. *Id.* at 580. A note from 2013 records that when a provider expressed concern about overuse or overdose, Plaintiff "laughed at the notion and stated that she'd not been given enough." *Id.* at 1268. In late 2018, an emergency room provider documented that Plaintiff would accept only IV hydromorphone for pain and, after administration, noted that she had not complained of pain and was "clearly . . . manipulative." *Id.* at 4944.

ORDER - 5

The ALJ also reasonably relied on noncompliance. Although Plaintiff was started on nortriptyline as a migraine prophylactic in January 2007 (AR at 683), by August 2007 emergency room records noted she was not taking any preventive medication (*id.* at 442). Emergency room providers referred her twice to Peninsula Community Health for ongoing care. *Id.* at 459, 482. The record reflects no follow-up before the date last insured, and Plaintiff offers no explanation for this failure. (*See* dkt. ## 9, 15.) The ALJ permissibly viewed this pattern as inconsistent with her account of uncontrolled, disabling migraines.

### 2.   *Neuropathy and Leg Pain*

Plaintiff next challenges the ALJ's decision to discount her testimony regarding disabling leg pain from neuropathy, shin splints, old ankle breaks, and tendinitis. (Dkt. # 9 at 12-14.) The ALJ accepted that, regardless of the cause, her leg impairment warranted restriction to medium work but found that the record did not support greater functional limitation, citing (1) largely normal examination findings, failure to follow treatment recommendations, and improvement with treatment, (2) inconsistent descriptions of pain, and (3) activities inconsistent with disabling leg pain. AR at 10668-70. Any one of these reasons, if supported, is sufficient. *See Carmickle v. Comm'r of Soc. Sec.*, 533 F.3d 1155, 1162 (9th Cir. 2008).

### i.   Medical Evidence and Treatment

While a lack of objective support alone cannot defeat symptom testimony, inconsistency with the medical record is a permissible factor. *Smartt*, 53 F.4th at 499; *Carmickle*, 533 F.3d at 1161. Plaintiff largely recites evidence she believes supports her position but does not grapple with the ALJ's cited findings. (Dkt # 9 at 12-14.)

The ALJ noted that exams during the period repeatedly showed normal 5/5 strength (AR at 597, 659, 668, 683), normal ambulation (*id.* at 594), and normal range of motion (*id.* at 597). *Id.* at 10669. Providers suspected diabetic neuropathy and advised that better glycemic control

ORDER - 6

would help. *Id.* at 663. Yet records repeatedly described her type 2 diabetes as "uncontrolled" and noted that she rarely tested her blood sugar. *Id.* at 526, 584, 660; *see, e.g., id.* at 544, 550, 562, 575, 581, 586, 590, 599. She declined a dietitian referral. *Id.* at 531. When a podiatrist evaluated her leg pain, he advised that orthopedics should evaluate it as it was outside podiatry's scope, but the record contains no evidence she saw orthopedics. *Id.* at 597.

Notably, in March 2008 her primary-care notes indicate that when she stopped all medications except nortriptyline, her neuropathy pain was well controlled. AR at 630. On this record, the ALJ reasonably concluded that the objective findings and treatment response did not support disabling leg pain.

### ii. Descriptions of Pain

The ALJ also pointed to inconsistent descriptions of pain and a pattern suggesting short-lived exacerbations rather than constant, severe pain. AR at 10669. During the relevant period there are no notations indicating that Plaintiff appeared in acute or apparent distress. *See, e.g., id.* at 412 (March 11, 2007 "General Appearance: In Distress? N"), 424 (April 14, 2008, same), 439 (August 7, 2007, same), 455 (August 12, 2007, same), 458 (August 12, 2007, "[doctor] would have expected to see more electrolyte derangement than presented at this time. The patient is nontoxic and appears to be in no acute distress."), 481 (August 29, 2007, "GENERAL: She is in no obvious distress."), 549 (September 5, 2008, "Alert. Not distressed"), 561 (August 13, 2008, "General: WD/WN/NAD"), 580 (July 09, 2008, "General: alert, nad"), 585 (June 18, 2008, "Gen: NAD, pleasant"), 589 (June 03, 2008, "General: alert, nad, obese"), 609 (March 25, 2008, "in no acute distress"), 625 (May 6, 2008, "General: alert, NAD"), 668 (December 12, 200,7 same), 672 (November 26, 2007, same).

Plaintiff's descriptions of leg pain varied widely: throbbing, dull ankle pain radiating to the knees (AR at 678); intermittent ache and pressure in the right foot (*id.* at 407); "dull heated

ORDER - 7

throb" in the shins (*id.* at 668); "sharp pain" in both legs for eleven years (*id.* at 543); and, a month later, "just a really bad ache" that began with cold weather (*id.* at 532). The ALJ reasonably viewed this pattern as reflecting intermittent exacerbations, rather than a continuous, disabling level of pain throughout the insured period. *Id.* at 10669.

iii.    Activities of Daily Living

The ALJ further relied on inconsistencies between Plaintiff's alleged limitations and her activities. *See Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). Plaintiff testified that leg pain interfered with caring for her children, but during the relevant period, her fiancé worked nights and she was the primary caregiver for her three children during the day. AR at 10669 (citing *id.* at 613). She also testified she could not walk more than 500 feet, had a "double limp," and could only be on her feet for five minutes before swelling. *Id.* at 58. Contemporaneous records, however, show that she walked five times per week for exercise, did water aerobics, and in September 2008 took a job that required her to be on her feet most of the time. *Id.* at 543, 585. The ALJ reasonably concluded these activities were inconsistent with the alleged severity of leg pain.

### 3.    *Mental Health*

Plaintiff testified at the second hearing that she had bouts of severe depression causing her to miss appointments and isolate at home for months, that medications only helped briefly, and that she could handle only one task per day. AR at 7834-38. The ALJ found her mental impairments caused some limitation but not to the disabling extent alleged, citing inconsistent treatment, improvement with treatment, and the role of situational stressors. *Id.* at 10670-71.

Plaintiff was switched to Celexa in January 2007. AR at 682. By May 2008 she presented to the psychiatric emergency department seeking to restart Celexa, though it was unclear when she stopped; providers noted she was "not a good medical historian." *Id.* at 604-07. The ALJ

ORDER - 8

reasonably inferred that her symptoms worsened when off medication. *Id.* at 10670. After an August 2008 hospitalization for a suicide attempt, Plaintiff reported her mood was "1000 times" better after resuming new medications she felt were more appropriate than the ones she had taken for 11 years. *Id.* at 557.

Plaintiff also linked exacerbations to situational stressors, reporting loss of her support network, job, car, and pain medications (AR at 529), financial and relationship problems (*id.* at 547), and "increased stress due to unemployment, many bills, out of control spending." *Id.* at 611. Providers noted her mood was stable at times but that environmental stressors and lapses in antidepressant and pain medications increased her risk. *Id.* at 548. By November 2008, her affect had improved and she was much less depressive. *Id.* at 526.

These contemporaneous records showing symptom fluctuation with medication and stressors, and improvement on appropriate treatment, reasonably support the ALJ's conclusion that Plaintiff's mental health limitations during the insured period, while real, were not as extreme as alleged.

### B.    The ALJ Did Not Err in Evaluating Medical Evidence

Under regulations applicable to this case, the ALJ is required to articulate the persuasiveness of each medical opinion, specifically with respect to whether the opinions are supported and consistent with the record. 20 C.F.R. § 404.1520c(a)-(c). These findings must be supported by substantial evidence. *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).

Plaintiff argues the ALJ misevaluated the opinion of testifying medical expert Arnold Ostrow, MD. (Dkt. # 9 at 4-5.) Dr. Ostrow testified at the first hearing that his opinion was based on his review of one exhibit and that, because he had never examined Plaintiff, he was not in a position to assess her subjective pain complaints. AR at 39-42. The ALJ found Dr. Ostrow's

ORDER - 9

opinion unsupported and inconsistent with the medical evidence, and more consistent with evidence after the date last insured. *Id.* at 10672. Plaintiff avers this was erroneous because Dr. Ostrow reviewed only exhibits from the relevant period. (Dkt. # 9 at 5.)

This Court agrees with the Eastern District of Washington that this argument is unpersuasive. *See* AR at 7886-87. Plaintiff does not explain how Dr. Ostrow's opinion is supported by or consistent with the medical record from the relevant period, beyond the conclusory assertion that "the record evidence throughout the relevant time provides overwhelming evidence supporting [Plaintiff's] nerve pain symptoms and limitations." (Dkt. # 9 at 5.) At the hearing, Dr. Ostrow did not identify specific objective findings or otherwise explain why the degree of limitation he assessed was warranted, stating only that his opinion was "based on the objective medical records [he] reviewed, [his] education, training, and experience." AR at 40. The ALJ thus reasonably discounted Dr. Ostrow's opinion as inadequately supported and inconsistent with the longitudinal evidence.

### C.    The ALJ Did Not Err at Step Three

Plaintiff next argues that the ALJ did not adequately explain why her impairment did not meet or equal Listings 12.04, 12.06, and 11.02. (Dkt. # 9 at 5-8.) As to Listing 12.04 and 12.06, the ALJ found that Plaintiff did not satisfy the "paragraph B" criteria. AR at 10664. She determined that the record showed only a mild limitation in understanding, remembering, or applying information (*id.* at 374, 395, 425, 440, 456, 634, 651, 8215); a moderate limitation in interacting with others (*id.* at 395, 450, 473, 491, 529, 547, 555, 585, 604, 612, 614, 630, 633-34, 646, 651); a mild limitation in concentrating, persisting, or maintaining pace (*id.* at 614, 633); and a moderate limitation in adapting or managing oneself (*id.* at 529, 543, 547-48, 555, 557,

ORDER - 10

577, 585, 598, 611, 614, 634, 651). Plaintiff offers her own summary of the record but does not directly challenge the ALJ's reading of these citations.

Plaintiff specifically takes issue with the ALJ's analysis of the "paragraph C" criteria. (Dkt. # 9 at 5-6.) However, the ALJ's unchallenged "paragraph B" findings support her conclusion that the record does not show at least two years of (1) ongoing treatment or structured support that diminishes symptoms and (2) only minimal capacity to adapt to changes or new demands. AR at 10665. The ALJ explicitly addressed adaptation in her "paragraph B" discussion of adapting or managing oneself. *Id.* at 10664. Moreover, an ALJ does not commit reversible error by providing a concise Step Three explanation where, as here, she later discusses the same evidence in detail elsewhere in the decision. *See Havens v. Kijakazi*, 2022 WL 2115109, at *1 (9th Cir. June 13, 2022) (citing *Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990); *Lewis v. Apfel*, 236 F.3d 503, 513-14 (9th Cir. 2001)).

With respect to Listing 11.02, the ALJ found that the frequency and severity of Plaintiff's headaches were based largely on her self-reports and that the objective record did not show significant interference with functioning as required by the listing. AR at 10662. As discussed above, the ALJ reasonably discounted Plaintiff's testimony regarding disabling headaches. *Cf. Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) ("An ALJ may reject a treating physician's opinion if it is based "to a large extent" on a claimant's self-reports that have been properly discounted as incredible."). Accordingly, the ALJ did not err at Step Three.

**D.    The ALJ Did Not Err at Step Five**

At step five, the burden shifts to the Commissioner to demonstrate that the claimant can perform other work that exists in "significant numbers" in the national economy. *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999). The Commissioner may satisfy this burden by

ORDER - 11

relying on the testimony of a Vocational Expert ("VE"). *Id.* at 1101; *see also Buck v. Berryhill*, 869 F.3d 1040, 1051 (9th Cir. 2017) (VE testimony is "inherently reliable").

Plaintiff contends the VE testimony lacks evidentiary value because it was based on an incomplete hypothetical. (Dkt. # 9 at 16-17.) But the ALJ's hypothetical matched the RFC she ultimately adopted. AR at 10691-95. As explained above, the Court finds no reversible error in the ALJ's evaluation of the medical evidence or Plaintiff's subjective complaints. Because the hypothetical included all limitations the ALJ reasonably found supported by substantial evidence, her reliance on the VE's responsive testimony was proper, and there was no error at Step Five. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005).

## V.    CONCLUSION

For the foregoing reasons, the Commissioner's final decision is AFFIRMED, and this case is DISMISSED with prejudice.

Dated this 19th day of March, 2026.

MICHELLE L. PETERSON
United States Magistrate Judge

ORDER - 12